AARON C. GUNDZIK (State Bar No. 132137)
agundzik@gghslaw.com
REBECCA G. GUNDZIK (State Bar No. 138446)
rgundzik@gghslaw.com
GARTENBERG GELFAND HAYTON LLP
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA 91403
Telephone: (213) 542-2100
Facsimile:  (213) 542-2101

JONATHAN M. LEBE (State Bar No. 284605)
Jon@lebelaw.com
LEBE LAW, A PROFESSIONAL LAW CORPORATION
777 S. Alameda Street, Second Floor
Los Angeles, CA 90021
Telephone: (213) 358-7046
Facsimile: (310) 820-1258

Attorneys for Plaintiff Paul Ratajesak, individually,
on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAUL RATAJESAK, individually and on behalf of all others similarly situated, | Case No.: 2:18-cv-09396 DOC(AGRx) |
| Plaintiff, | *Assigned to Honorable David O. Carter* |
| vs. | |
| NEW PRIME, INC., a Nebraska corporation; and DOES 1 through 25, | **PLAINTIFF PAUL RATAJESAK'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR DISMISS FOR IMPROPER VENUE** |
| Defendants. | |
| | **Date: February 25, 2019** |
| | **Time: 8:30 a.m.** |
| | **Place: Courtroom 9D** |
| | **Ronald Reagan Federal Building** |
| | **411 West Fourth Street** |
| | **Santa Ana, CA, 92701-4516** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

RELEVANT FACTS ........................................................................................ 2

DISCUSSION .................................................................................................. 4

I.    THIS MOTION AND THE ARBITRATION AGREEMENT ARE NOT
      SUBJECT TO THE FEDERAL ARBITRATION ACT. .......................... 4

II.   THE CHOICE OF LAW PROVISION IS UNENFORCEABLE
      BECAUSE MISSOURI LAWS ARE CONTRARY TO
      FUNDAMENTAL POLICIES OF CALIFORNIA. .................................. 5

III.  LABOR CODE SECTION 229 PRECLUDES ENFORCEMENT. ........ 13

IV.   THE ARBITRATION AGREEMENT IS UNENFORCEABLE DUE TO
      UNCONSCIONABILITY ................................................................... 13

      A.    Procedural Unconscionability is Present. .................................. 13

      B.    There are Numerous Substantively Unconscionable Terms. ........ 15

            1.    The Discovery Limitations Are Unconscionable. ..................... 15

            2.    The One-Year Limitations Period is Unconscionable. .............. 16

            3.    The Class Action Waiver is Unconscionable. ........................... 17

            4.    The Fee Requirements are Unconscionable. ............................. 19

            5.    The Forum Selection Clause is Unconscionable. ...................... 20

            6.    The Delegation Clause is Unconscionable. .............................. 21

      C.    The Agreement is Permeated with Unconscionability ................. 22

V.    LABOR CODE SECTION 925 PRECLUDES ENFORCEMENT ........ 23

CONCLUSION .............................................................................................. 24

i

# TABLE OF AUTHORITIES

## Federal Cases

*Arkansas Ed. Ass'n v. Board of Ed., Portland, Ark. Sch. Dist.,*
446 F.2d 763 (8th Cir. 1971) ........................................................................18

*Arkley v. Aon Risk Servs. Cos.,*
2012 U.S. Dist. LEXIS 96330 (C.D. Cal. June 13, 2012) .........................7, 10

*AT&T Mobility LLC v. Concepion,*
131 S.Ct. 1740 (2011) ...................................................................................19

*Ayala v. U.S. Xpress Enters.,*
2017 U.S. Dist. LEXIS 125247 (C.D. Cal. July 27, 2017) ...............................7

*Bermudez v. PrimeLending,*
2012 U.S. Dist. LEXIS 197023 (C.D. Cal. Aug. 14, 2012) ..............................8

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
622 F.3d 996 (9th Cir. 2010) ......................................................................1, 6

*Chavarria v. Ralphs Grocery Co.,*
733 F.3d 916, 922 (9th Cir. 2013) ........................................................8, 13, 14

*Circuit City Stores, Inc. v. Adams,*
532 U.S. 105 (2001) .........................................................................................4

*Da Silva v. Darden Rests., Inc.,*
2018 U.S. Dist. LEXIS 121857 (C.D. Cal. July 20, 2018) .............................14

*Davis v. O'Melveny & Myers,*
458 F.3d 1066 (9th Cir. 2007) .......................................................................16

*DHR Int'l Inc. v. Charlson,*
2014 U.S. Dist. LEXIS 136462 (N.D. Cal. September 26, 2014) .........1, 7, 12

*Erie Railroad Co. v. Tompkins,*
304 U.S. 64 (1938) ...........................................................................................5

*Ferguson v. Countrywide Credit Indus., Inc.,*
298 F.3d 778 (9th Cir. 2002) .........................................................................16

*Goldthorpe v. Cathay Pac. Airways*,
   279 F. Supp. 3d 1001 (N.D. Cal. Jan. 8, 2018)..............................................10

*Harden v. Roadway Packaging Sys.*,
   249 F.3d 1137 (9th Cir. 2001).....................................................................5

*Hoffman v. Citibank (S. Dakota), N.A.*,
   546 F.3d 1078 (9th Cir. 2008)..................................................................5, 8

*Horn v. Associated Wholesale Grocers, Inc.*,
   555 F.2d 270 (10th Cir. 1977)...................................................................18

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003)...................................................................16

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
   313 U.S. 487 (1941) ...................................................................................5

*Lang v. Skytap, Inc.*,
   2018 U.S. Dist. LEXIS 182701 (N.D. Cal. Oct. 24, 2018).......................9, 20

*Lloyd v. Navy Fed. Credit Union*,
   2018 U.S. Dist. LEXIS 62404 (S.D. Cal. April 12, 2018)............................6

*Mitchell v. DeMario Jewelry*,
   361 U.S. 288 (1960) .................................................................................18

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999).....................................................................18

*New Prime, Inc. v. Oliveira*, ___S. Ct. ___,
   2019 WL 189342 (Jan. 15, 2019).....................................................1, 2, 5, 22

*Oestreicher v. Alienware Corp.*,
   322 Fed. Appx. 489 (9th Cir. April 2009) ................................................11

*Ruiz v. Affinity Logistics Corp.*,
   667 F.3d 1318 (9th Cir. 2012)................................................................7, 12

*Saravia v. Dynamex*, Inc.,
   310 F.R.D. 412 (N.D. Cal. 2015)............................................................7, 12

OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Sessions v. Prospect Funding Holdings LLC*,
2017 U.S. Dist. LEXIS 222220 (C.D. Cal. July 13, 2017) ..........................1, 20

*Slanina v. William Penn Parking Corp., Inc.*
106 F.R.D. 419 (W.D.Pa. 1985)......................................................................18

*Tura v. Med. Shoppe Int'l, Inc.*,
2010 U.S. Dist. LEXIS 151310 (C.D. Cal. Mar. 3, 2010) .......................7, 8, 9

*Ulbrich v. Overstock.com, Inc.*,
887 F. Supp. 2d 924 (N.D. Cal. 2012) ...........................................................12

*Van Slyke v. Capital One Bank*,
503 F. Supp. 2d 1353 (N.D. Cal. 2007) ...........................................................1

**California Cases**

*Abramson v. Juniper Networks, Inc.*,
115 Cal. App .4th 638 (2004)..........................................................................13

*Ajamian v. Cantor CO2e, L.P.*,
203 Cal. App. 4th 77 (2012)........................................................................2, 22

*Application Group v. Hunter Group*,
61 Cal. App. 4th 881 (1998)............................................................................10

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000)...............................................................................passim

*Baxter v. Genworth North America Corp.*,
16 Cal. App. 5th 713 (2017)......................................................................21, 22

*Brack v. Omni Loan Co., Ltd.*,
164 Cal. App. 4th 1312 (2008)..........................................................................5

*Brinker Restaurant Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ...................................................................................9

*Carbajal v. CWPSC, Inc.*,
245 Cal. App. 4th 227 (2016),................................................................2, 13, 22

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
226 Cal. App. 4th 74 (2014)............................................................................23

iv

*Cash v. Winn*,
   205 Cal. App. 4th 1285 (2012)........................................................9

*Dynamex Operations West v. Superior Court*,
   4 Cal. 5th 903 (2018)................................................................10

*Fitz v. NCR Corp.*,
   3118 Cal. App. 4th 702 (2004).............................................14, 16

*Flores v. Transamerica HomeFirst, Inc.*,
   93 Cal. App. 4th 846 (2001).......................................................14

*Garcia v. Superior Court*,
   236 Cal. App. 4th 1138 (2015)................................................2, 13

*Garrido v. Air Liquide Industrial U.S. LP*,
   241 Cal. App. 4th 833 (2015).....................................................18

*Gentry v. Superior Court*,
   42 Cal. 4th 443 (2007) ........................................................passim

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807 (1981).............................................................8, 14

*Hall v. Superior Court*,
   150 Cal. App. 3d 411, 416 (1984).....................................2, 20, 22

*Harper v. Ultimo*,
   113 Cal. App. 4th 1402 (2003)...................................................14

*Hoover v. American Income Life Ins. Co.*,
   206 Cal. App. 4th 1193 (2012)...................................................21

*Kinney v. United HealthCare Servs., Inc.*,
   70 Cal. App. 4th 1322 (1999).....................................................16

*Klussman v. Cross Country Bank*,
   134 Cal. App. 4th 1283 (2005).....................................................8

*Magno v. The College Network, Inc.*,
   1 Cal. App. 5th 277 (2016).............................................9, 13, 15

OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Muro v. Cornerstone Staffing Sols., Inc.*,
   20 Cal. App. 5th 784 (2018)....................................................................17, 18

*Nedlloyd Lines v. Superior Court*,
   3 Cal. 4th 459, 466 (1992) .................................................................5, 6, 12

*Ontiveros v. DHL Exp. (USA), Inc.*,
   164 Cal. App. 4th 494 (2008)....................................................................16, 21

*Parada v. Superior Court*,
   176 Cal. App. 4th 1554 (2009)..........................................................................14

*Penilla v. Westmont Corp.*,
   3 Cal. App. 5th 205 (2016).................................................................8, 14, 19

*Pinela v. Neiman Marcus Group, Inc.*,
   238 Cal. App. 4th 227 (2015)...................................................................passim

*Ramos v. Superior Court*,
   28 Cal. App. 5th 1042 (2019).........................................................................19

*Schachter v. Citigroup, Inc.*,
   47 Cal.4th 610, 619 (2009) ............................................................................21

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013) ..........................................................................9, 15

*Trivedi v. Curexo Tech. Corp.*,
   189 Cal. App. 4th 387 (2010)..........................................................................14

*Troester v. Starbucks Corp.*,
   5 Cal. 5th 829 (2018)........................................................................................9

*Verdugo v. Alliantgroup, L.P.*,
   237 Cal. App. 4th 141 (2015)...................................................................passim

*Washington Mutual Bank v. Superior Court*,
   24 Cal. 4th 906 (2001) .....................................................................................6

vi

**Missouri Cases**

*Eaton v. CMH Homes, Inc.,*
   2015 WL 3387910 (Mo. banc. 2015).......................................................8, 19

*Haggard v. Div. of Employment Sec.,*
   238 S.W.3d 151 (Mo. banc. 2007)..............................................................11

*State of Missouri, Dept. Soc. Servs., Div. of Aging v.*
*Brookside Nursing Ctr., Inc.,*
   50 S.W.3d 273 (Mo. banc. 2001)...................................................................8

*Swain v. Auto Servs.,*
   128 S.W.3d 103 (Mo. App. 2003)...................................................................8

**Federal Statutes**

9 U.S.C. Code § 1 ..............................................................................1, 4, 17
9 U.S.C. Code §§1-16..................................................................................4

**California Statutes**

Cal. Business & Professions Code § 17200 ...................................................17
Cal. Business & Professions Code § 17208 ...................................................17
Cal. Code of Civil Procedure § 338................................................................17
Cal. Code of Civil Procedure § 340................................................................17
Cal. Labor Code § 201.................................................................................10
Cal. Labor Code § 202.................................................................................10
Cal. Labor Code § 203.................................................................................21
Cal. Labor Code § 219.................................................................................20
Cal. Labor Code § 226.................................................................................10
Cal. Labor Code § 226.2..............................................................................10
Cal. Labor Code § 226.7..............................................................................10
Cal. Labor Code § 229.............................................................2, 7, 11, 12, 13
Cal. Labor Code § 219(a) ........................................................................1, 9
Cal. Labor Code § 512(a) ...........................................................................10
Cal. Labor Code § 925..........................................................................2, 7, 12
Cal. Labor Code § 1194.......................................................10, 12, 20, 21
Cal. Labor Code § 1194(a) .......................................................................1, 9
Cal. Labor Code § 1197...............................................................................10
Cal. Labor Code § 1197.1............................................................................10
Cal. Labor Code § 2802........................................................................10, 21

OPPOSITION TO MOTION TO COMPEL ARBITRATION

## Missouri Statutes

Missouri Uniform Arbitration Act ................................................................. 19

Mo. Ann. Stat. § 290.010-290.530 .............................................................. 11

Mo. Ann. Stat. § 290.080 ............................................................................ 11

Mo. Ann. Stat. § 290.527 ............................................................................ 17

## Other Authorities

*Restatement Second Conflict of Laws* .......................................................... 6

OPPOSITION TO MOTION TO COMPEL ARBITRATION

## <u>INTRODUCTION</u>

Defendant New Prime, Inc. ("Prime" or "Defendant") is attempting to enforce an arbitration agreement including Missouri choice of law and choice of forum provisions which, if enforced, would deny Plaintiff Paul Ratajesak ("Plaintiff") of the unwaivable rights accorded to him under the California Labor Code pursuant to California Labor Code sections 219(a) and 1194(a). [1] Prime should not be permitted to evade its responsibility to provide Plaintiff and the other putative class members the worker protections afforded to them by California law.

"California has a strong public policy against enforcing choice-of-law provisions that would abrogate the plaintiffs' rights to pursue remedies." *DHR Int'l Inc. v. Charlson*, 2014 U.S. Dist. LEXIS 136462, *10-*11(N.D. Cal. September 26, 2014), *citing Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1361 (N.D. Cal. 2007); *See also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. Sept. 16, 2010). Likewise, when an agreement contains both choice-of-law and forum selection clauses, they must be considered together, and where "the basis of the claim concerns an unwaivable state law right for which the transferee forum is inadequate," the party seeking enforcement must show that by enforcement, these unwaivable rights will not be diminished. *Sessions v. Prospect Funding Holdings LLC*, 2017 U.S. Dist. LEXIS 222220, *8-*10 (C.D. Cal. July 13, 2017); *Verdugo*, 237 Cal. App. 4th 141, 144-145, 154 (2015). Prime cannot make this showing.

Similarly, when both choice-of-law and delegation clauses are present, "a determination as to the validity of the choice of law provision as it applies to

---

[1] The Federal Arbitration Act does not apply to interstate drivers such as Plaintiff, even those classified as independent contractors. Federal Arbitration Act, 9 U.S.C. Code § 1; *New Prime, Inc. v. Oliveira*, ___S. Ct. ___, 2019 WL 189342 (Jan. 15, 2019).

1

1  the delegation clause is a prerequisite to a determination of whether the …
2  delegation clause should be enforced." *Pinela*, 238 Cal. App. 4th 227, 249
3  (2015), *citing Hall v. Superior Court*, 150 Cal. App. 3d 411, 416 (1984). When
4  both clauses are present and the chosen state's laws deprive an employee of the
5  protections of California employment laws—as is the case here—the
6  delegation clause will not be enforced. *Pinela*, 238 Cal. App. 4th 227, 246-248
7  (2015).

8      The Supreme Court determined in *New Prime, Inc. v. Oliveira*, ___S.
9  Ct. ___, 2019 WL 189342 (Jan. 15, 2019) that all interstate drivers, including
10 independent contractors such as Plaintiff, are exempt from the provisions of the
11 F.A.A. Therefore, California law applies and the arbitration agreement cannot
12 be enforced pursuant to California Labor Code sections 229 and 925. *Garcia v.*
13 *Superior Court*, 236 Cal. App. 4th 1138, 1146 (2015). Moreover, because the
14 arbitration agreement is an adhesive contract entered into in the context of
15 employment, and because five of its seven sentences are substantively
16 unconscionable, the Court should conclude that it is permeated with
17 unconscionability and cannot be enforced. *Carbajal v. CWPSC, Inc*., 245 Cal.
18 App. 4th 227, 254 (2016), *citing Ajamian v. Cantor CO2e, L.P.*, 203 Cal. App.
19 4th 77, 803 (2012). The motion to compel should be denied.

20                          **RELEVANT FACTS**

21      Paul Ratajesak worked as a truck driver for Prime from August of 2017
22 until January 2018. Declaration of Paul Ratajesak ("Ratajesak Decl."),
23 ¶ 3. At all times since he first applied for a job with Prime, he lived in
24 California. Ratajesak Decl., ¶ 4. From August 14-17, 2017, Mr. Ratajesak went
25 to Prime's mandatory job training in Salt Lake City, Utah, during which time
26 he signed papers concerning training, orientation and his Department of
27 Transportation-mandated physical examination. Ratajesak Decl., ¶ 5. The
28 following week, he picked up his truck and signed the rest of the paperwork for

his job at the Success Leasing office, which is in the same building as Prime. Ratajesak Decl., ¶ 6.

No one told Plaintiff or suggested to him that any of the terms of the Independent Contractor Agreement were negotiable. Ratajesak Decl., ¶ 6. He was given already-drafted contracts, which he was told to sign in order to start driving. Plaintiff was not told that the arbitration provision in the Independent Contractor Agreement was in any way optional or that he could opt out of it. Ratajesak Decl., ¶ 7. At the time he signed the agreement, he did not understand that the arbitration rules under this agreement, and arbitration in general, would be less favorable to him. *Id*. He did not understand that because of the terms of the arbitration provision, he would lose the rights provided under California law, particularly the right to be treated as an employee and not an independent contractor, as well as the rights provided under the California Labor Code to be paid for his non-productive time and rest breaks (which are not separately compensated), the right to be paid at least minimum wage for each hour he worked, the right to be paid all amounts due at separation, the right to be paid premium wages for his missed, late and/or on-call rest breaks and meal breaks, the right to be paid for his unreimbursed expenses, and the right to obtain penalties for inaccurate wage statements. *Id*. He also did not understand that by virtue of the arbitration agreement, he would lose the ability to file a class action lawsuit on behalf of all of the drivers who reside in California. *Id*.

During the 20 weeks he worked for Prime, Plaintiff drove in and out of California about 40 times. Ratajesak Decl., ¶ 9. At the end of each trip, he would drop his last load in California and then go to his home in California. He would start each successive trip by picking up a load at Prime's yard in Fontana, California. Ratajesak Decl., ¶ 8. Plaintiff spent more time working for Prime in California than any other state, including Missouri. Ratajesak Decl., ¶

9. [2] When he worked for Prime, Plaintiff had a California commercial driver's license, without which he could not have operated his truck, and did not have a commercial driver's license issued by any other state. Ratajesak Decl., ¶ 10.

During the time he worked for Prime, Plaintiff did not understand all of his rights under California labor laws. Ratajesak Decl., ¶ 11.  Yet even if he had known, he would not have filed a lawsuit while working for Prime because he was concerned that if he sued his employer, Prime could retaliate against him. Ratajesak Decl., ¶ 11.

## DISCUSSION

## I.   THIS MOTION AND THE ARBITRATION AGREEMENT ARE NOT SUBJECT TO THE FEDERAL ARBITRATION ACT.

The Federal Arbitration Act, 9 U.S.C. Code §§1-16, generally governs arbitration agreements in transactions involving interstate commerce. State laws that are contrary to the FAA's broad precepts concerning the enforceability of arbitration agreements are preempted. However, the FAA specifically excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. §1 ("but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.")

"Section 1 exempts from the [Act] ... contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). As an interstate truck driver, Plaintiff carried and delivered goods between the states. As such, he is exempt from the requirements of the F.A.A.

---

[2] Plaintiff's counsel requested specific information regarding the miles Plaintiff drove in California, and even agreed to extend the parties' time to respond to the two pending motions based on Prime's representation that this information would be forthcoming. R. Gundzik Decl., ¶¶ 11-12, Ex. H. It was never provided.

1  *Harden v. Roadway Packaging Sys.*, 249 F.3d 1137, 1140 (9th Cir. 2001)

2  (Plaintiff, as an interstate delivery driver, "engaged in interstate commerce that

3  is exempt from the FAA.")

4        The United States Supreme Court has reviewed Prime's arbitration

5  agreement and determined that F.A.A.'s exclusion applies to the drivers Prime

6  has classified as independent contractors. *New Prime, Inc. v. Oliveira*, ___S.

7  Ct. ___, 2019 WL 189342.

8  **II.    THE CHOICE OF LAW PROVISION IS UNENFORCEABLE**

9  **        BECAUSE MISSOURI LAWS ARE CONTRARY TO**

10 **        FUNDAMENTAL POLICIES OF CALIFORNIA.**

11        In an action such as this, where jurisdiction is based on diversity of

12 citizenship, a federal court must apply the choice of law rules of the forum

13 state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor*

14 *Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Hoffman v. Citibank (S. Dakota),*

15 *N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008). As explained by the California

16 Supreme Court in *Nedlloyd Lines v. Superior Court*, 3 Cal. 4th 459, 466 (1992),

17 California law requires a three-step analysis to determine whether a choice of

18 law clause is enforceable.

19        The first step is to determine: "(1) whether the chosen state has a

20 substantial relationship to the parties or their transaction, or (2) whether there is

21 any other reasonable basis for the parties' choice of law." *Id.* The second step is

22 "whether the chosen state's law is contrary to a fundamental policy of

23 California." *Id.* "To be fundamental, within the meaning of Restatement section

24 187, a policy must be a substantial one," such as a policy involving **"**some

25 fundamental principle of justice [or] some prevalent conception of morals."

26 *Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th 1312, 1323 (2008). When the

27 legislature has enacted anti-waiver laws to prevent parties from waiving the

28 rights afforded by California statutes—such as it has done here—"it is clear it

5

has found the particular policies which underlie a statute are more important than the more general policy in favor of the freedom to contract." *Id.* at 1324.

Where a "fundamental conflict" exists, as a third step "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Nedlloyd Lines v. Superior Court*, 3 Cal. 4th 459, 466, quoting section 187 of the *Restatement Second of Conflict of Laws*. "If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance" a court must "decline to enforce a law contrary to this state's fundamental policy." *Id.* The state with the materially greater interest is the state which, "in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied…If California possesses the materially greater interest, the court applies California law despite the choice of law clause." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d at 1003, citing *Nedlloyd*, 3 Cal. 4th at 459; *See also Lloyd v. Navy Fed. Credit Union*, 2018 U.S. Dist. LEXIS 62404, *15 S.D. Cal. (April 12, 2018) ("where another state's laws offer greater or lesser protection that runs contrary to a fundamental policy of California, then California law applies.") "Under *Nedlloyd*…the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that 'substantial injustice' would result from its enforcement." *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 917-918 (2001).

Applying the *Nedlloyd* test to Prime's arbitration agreement, the Court should conclude that Prime's Missouri choice-of-law provision is invalid. Although there may be a reasonable basis for New Prime to have chosen the laws of Missouri, Missouri's laws regarding the enforcement of arbitration agreements and its policies regarding the treatment and compensation of employees are contrary to the fundamental policies of California. California

6

state and federal courts have repeatedly recognized that California has a materially greater interest in the application of both these policies which overrides the enforcement of choice of law provisions. *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323-25 (9th Cir. 2012); *DHR Int'l Inc. v. Charlson*, 2014 U.S. Dist. LEXIS 136462, *10-*11; *Saravia v. Dynamex*, Inc., 310 F.R.D. 412, 419 (N.D. Cal. 2015); *Ayala v. U.S. Xpress Enters.*, 2017 U.S. Dist. LEXIS 125247 (C.D. Cal. July 27, 2017); *Arkley v. Aon Risk Servs. Cos.*, 2012 U.S. Dist. LEXIS 96330, *7-*9 (C.D. Cal. June 13, 2012); *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th at 257. *Verdugo*, 237 Cal. App. 4th at 144.[3]

Unlike Missouri, which follows the F.A.A., the California legislature has expressed an "[o]utright legislative hostility to arbitrating wage claims…" *Gentry v. Superior Court*, 42 Cal. 4th 443, 465, fn. 8 (2007). That hostility is evidenced in Labor Code section 229, which prevents an employer—such as Prime—to force an employee—such as Mr. Ratajesak—to arbitrate his claims for unpaid wages. As the California Supreme Court stated: "if we can discern any legislative policy toward employee wage claims, it is that employees should have direct access to a judicial forum to enforce their rights." *Id*.

California and Missouri law also conflict on the issue of unconscionability. *Tura v. Med. Shoppe Int'l, Inc.*, CV 09-7018 SVW (VBKx), 2010 U.S. Dist. LEXIS 151310, *20 (C.D. Cal. Mar. 3, 2010). "Under Missouri law, a party challenging a contract faces significant hurdles in

---

[3] The legislative history of recently-enacted California Labor Code section 925, which prohibits employers from requiring employees to arbitrate in another state or pursuant to another state's laws, provides further support for finding that California has a material interest that overrides the enforcement of Prime's choice of law provision, as it explains that Section 925 as a safeguard against the unfair aspects of choice of law and choice of forum clauses which deprive California residents of the protections of California labor laws. See Plaintiff's Request for Judicial Notice ("RJN"), No. 1.

showing that the contract is unconscionable." *Id*. In Missouri, "Unconscionability is defined as 'an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'" *Eaton v. CMH Homes, Inc., No. SC 94374*, 2015 WL 3387910 (Mo. banc. May 26, 2015), *citing State of Missouri, Dept. Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc*., 50 S.W.3d 273, 277 (Mo. banc. 2001). To be unconscionable in Missouri, an agreement must be "such as no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other . . ." *Swain v. Auto Servs*., 128 S.W.3d 103, 108 (Mo. App. 2003); *See also Tura v. Med. Shoppe Int'l, Inc*., 2010 U.S. Dist. LEXIS 151310, *20.

California law on unconscionability evinces a fundamental state policy and provides far greater protection. *Hoffman v. Citibank (S.D.), N.A*., 546 F.3d at 1083, *citing Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 739-40 (2005) ("California has a fundamental policy against unconscionable class arbitration waivers"); *See also*, *Bermudez v. PrimeLending*, 2012 U.S. Dist. LEXIS 197023, at *15 (C.D. Cal. Aug. 14, 2012) ("[T]o the extent that the arbitration agreement would be enforceable under Texas law, but would not be enforceable under California law, Texas law conflicts with a fundamental public policy of California.") To be unconscionable under California law, a contract need not be one that "no man in his senses and not under delusion would make," but instead must have elements of procedural and substantive unconscionability. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). In California, a contract of adhesion in the context of employment is procedurally unconscionable. *Penilla v. Westmont Corp*., 3 Cal. App. 5th 205, 214 (2016), *citing Graham v. Scissor-Tail, Inc*., 28 Cal. 3d 807, 817 (1981). And an arbitration agreement in California is substantively unconscionable if it imposes terms that are overly-harsh, unfairly one-sided, or

8

"unreasonably favorable to the more powerful party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013); *Magno v. The College Network, Inc.*, 1 Cal. App. 5th 277, 287-288 (2016). Because of this conflict, "California has a 'fundamental policy' of applying its own rules related to contract unconscionability." *Tura*, 2010 U.S. Dist. LEXIS 151310, *21-22.

More importantly, California has a fundamental policy in favor of providing California residents the protections of the California Labor Code. *Cash v. Winn*, 205 Cal. App. 4th 1285, 1297 (2012) ("State wage and hour laws reflect the strong public policy favoring protection of workers' general welfare and society's interest in a stable job market. (Citations omitted). They are therefore liberally construed in favor of protecting workers."); *See also Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026-1027 (2012) (same); *See also Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 839 (2018) ("Time and again, we have characterized that purpose [of the Labor Code and IWC Orders] as the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours….On a number of occasions, we have recognized the divergence between IWC wage orders and federal law, generally finding state law more protective than federal law.")

California's strong public policy to protect employees from the nonpayment of wages is so uncompromising that the California legislature has made the right to compensation for California employees unwaivable. *Verdugo*, 237 Cal. App. 4th at 157–158; *Lang v. Skytap, Inc.*, 2018 U.S. Dist. LEXIS 182701, *11 (N.D. Cal. Oct. 24, 2018). In fact, Labor Code sections 219(a) (which prevent parties from waiving the provisions within Labor Code sections 200-244) and Labor Code section 1194(a) prevent the parties from waiving nearly all of Plaintiff's claims. And, California's interest in protecting its residents applies even when they perform most of their work beyond the boundaries of the state. *Arkley v. Aon Risk Servs. Cos.*, 2012 U.S. Dist. LEXIS

96330, *7-*9 (C.D. Cal. June 13, 2012), *citing Application Group v. Hunter Group*, 61 Cal. App. 4th 881, 900 (1998); *Goldthorpe v. Cathay Pac. Airways, Ltd.* 279 F. Supp. 3d 1001 (N.D. Cal. Jan. 8, 2018) (California has a "strong interest" in protecting transportation workers who—like Plaintiff—are based in California but perform the majority of their work outside the state.)[4]

Missouri labor laws are in direct conflict with the worker protections provided by California labor laws. Plaintiff has alleged claims for misclassifying him as an independent contractor and for the attendant violations of Labor Code sections 226.2 (failure to pay for nonproductive time and rest periods), 1194, 1197, 1197.1 (failure to pay minimum wages for all time worked), 226.7 and 512(a) (failure to provide meal and rest breaks), 226 (non-compliant wage statements), 201 and 202 (failure to pay all amounts due at separation),  2802 (failure to reimburse necessary expenditures), and unfair business practices.

Most of these violations don't even exist under Missouri law. In California, the "ABC test" applies to determine if a worker has been misclassified as an employee. *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903 (2018). Pursuant to the "ABC" test, a worker will presumptively be considered to be an employee unless:

_____

[4] The *Goldthorpe* court  explained that (1) the language of the Section 1(E) of Wage Order 9 applies to all California-based transportation workers while they are traveling elsewhere as part of their jobs except those covered by a collective bargaining agreement, (2) the legislative history of Section 1(E) shows that the Labor "Commission was aware that California-based transportation workers often perform portions of their work out of state, and that sometimes this work needs to be covered by California law," and (3) "because the Labor Code and IWC wage orders are complementary and must be harmonized, the language and history of Wage Order 9 also supports the application of the Labor Code to California-based transportation workers who travel outside of the state as part of their work." *Goldthorpe v. Cathay Pac. Airways, Ltd.*, 279 F. Supp. 3d at 1004-1005.

10

"the hiring entity establishes (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business..."

*Id*. at 964. Conversely, Missouri uses a 20-factor test based on the IRS model to determine worker classification. *See Haggard v. Div. of Employment Sec.*, 238 S.W.3d 151, 157 (Mo. banc. 2007). The Missouri Department of Labor and Industrial Relations further breaks down the test into three main categories: behavioral control, financial control, and the type of relationship of the parties. *Id*.

Missouri workers are not entitled to be paid for their non-productive time and rest periods. They are not entitled to a break of any kind, including a lunch break. See Mo. Ann. Stat. § 290.010-290.530.; RJN, No. 2; R. Gundzik Decl., ¶ 3, and Ex. A. Missouri employers are not required to reimburse their employees' expenditures, and Missouri has no statute which provides penalties for non-compliant wage statements. See Mo. Ann. Stat. § 290.080. Any claim for unpaid minimum wages would be at Missouri's much lower rate, which was $7.85 until January 1, 2019. RJN, No. 2; R. Gundzik Decl., ¶ 5, Ex. C. And Missouri has no equivalent to Labor Code § 229.

Finally, California has a materially greater interest than Missouri in the rules applied to the enforcement of arbitration agreements. *See Oestreicher v. Alienware Corp*., 322 Fed. Appx. 489, 491-492 (9th Cir. April 2009). There is "a strong California policy in favor of protecting its citizens from enforcement of agreements that do not comport with California unconscionability standards" and California has a "materially greater interest than [][another

11

state] in the determination of whether a California citizen should be required to submit his employment-related claims to arbitration." *Ulbrich v. Overstock.com, Inc*., 887 F. Supp. 2d 924, 930 (N.D. Cal. 2012).

Because California's interest in enforcing its wage and hour laws is materially greater than a non-resident's freedom to contract, California courts have routinely found that when a choice-of-law provision prevents the application of California wage and hour laws, it will not be enforced. *See Ruiz v. Affinity Logistics Corp*., 667 F.3d at 1323-25 (overturning district court's enforcement of a Georgia choice of law provision in a wage and hour action by California resident truck drivers against a Georgia based company because California's interest was materially greater than Georgia's); *DHR Int'l Inc. v. Charlson*, 2014 U.S. Dist. LEXIS 136462 (applying California law despite choice of law provision); *Pinela v. Neiman Marcus Group, Inc*., 238 Cal. App. 4th at 257 (California's interest in enforcing its own worker protections is materially greater than Texas's interest in a uniform wage and hour regime); *Saravia v. Dynamex*, Inc., 310 F.R.D. at 419; *Ayala v. U.S. Xpress Enters*., 2017 U.S. Dist. LEXIS 125247 (choice of law provision not enforced because California wage and hour laws at issue). This makes sense because enforcing a choice of law provision which fails to incorporate the California Labor Code would effectively waive an employee's right to the benefit of numerous statutes which the California legislature has deemed unwaivable by virtue of Labor Code sections 219(a) and 1194.

Because the arbitration agreement's choice of law provision would deprive Plaintiff of unwaivable protections of the California Labor Code, it should not be enforced under *Nedlloyd*'s three-part test. The Court should instead apply California Labor Code Sections 229 and 925 and California's unconscionability analysis and conclude that the agreement is unenforceable. *//*

### III. LABOR CODE SECTION 229 PRECLUDES ENFORCEMENT.

Under California law (when the F.A.A. does not apply), an employee cannot be required to arbitrate claims for unpaid wages. Cal. Lab. Code §229. Section 229 is unwaivable. Cal. Lab. Code § 219(a). "[I]f the agreements are exempt from the FAA under section 1, their arbitration provisions are trumped by Labor Code section 229." *Garcia v. Superior Court*, 236 Cal. App. 4th at 1146 (Section 229 applied to truck drivers and prohibited arbitration of their claims for misclassification and to recover minimum wage payments, reimbursements and statutory penalties).

Pursuant to Section 229, Plaintiff cannot be required to arbitrate his claims. The motion should be denied.

### IV. THE ARBITRATION AGREEMENT IS UNENFORCEABLE DUE TO UNCONSCIONABILITY.

"Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d at 922(citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)). "However, the two elements need not be present in the same degree." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App .4th 638, 655-656 (2004). They are measured on a "sliding scale" such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Carbajal*, 245 Cal. App. 4th at 242; *Chavarria*, 733 F.3d at 922 (same).

#### A. Procedural Unconscionability is Present.

"Procedural unconscionability pertains to the making of the agreement and requires oppression or surprise," but does not require both. *Magno v. The College Network, Inc.*, 1 Cal. App. 5th at 285; *Carbajal*, 245 Cal. App. 4th at 243. "Oppression addresses the weaker party's absence of choice and unequal

bargaining power that results in 'no real negotiation.'" *Chavarria v. Ralphs Grocery Co.*, 733 F.3d at 922. Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party. *Id.* at 922 (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1568 (2009)). A contract of adhesion—a standardized contract imposed and drafted by the party of superior bargaining strength which provides the other party only the opportunity to either accept or reject it—is deemed to be procedurally unconscionable under California law. *Penilla v. Westmont Corp.*, 3 Cal. App.5th at 214, *citing Graham v. Scissor-Tail, Inc.*, 28 Cal.3 d at 817; *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 852 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability.")

The arbitration agreement here was drafted in the context of employment solely by Prime and is a procedurally unconscionable adhesive contract. It is a standardized contract which was imposed and drafted by the party of superior bargaining strength—Prime—which provided Plaintiff only the opportunity to either accept or reject it. Ratajesak Decl., ¶¶ 5-7.

The arbitration agreement is also procedurally unconscionable because it did not include the AAA Commercial Rules that would govern any arbitration. *Da Silva v. Darden Rests., Inc.*, 2018 U.S. Dist. LEXIS 121857, at *8-9 (C.D. Cal. July 20, 2018) (citing, *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010) and *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 702-23 (2004) ("Not providing the rules which govern an arbitration agreement has also been found to be procedurally unconscionable, on the basis of unfair surprise."). Defendant's failure to identify which version of the AAA's Commercial Rules apply or the fees charged by the AAA heightens its procedural unconscionability. *See Da Silva*, 2018 U.S. Dist. LEXIS 121857, at *9, citing *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1407 (2003). This failure

14

is particularly misleading here, given that the AAA's Commercial Rules allow for only a limited amount of discovery.

## B. There are Numerous Substantively Unconscionable Terms.

Substantive unconscionability "looks to the actual terms of the parties' agreement to 'ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as 'overly harsh', 'unduly oppressive', 'so one-sided as to shock the conscience,' or 'unfairly one-sided.'" *Magno v. The College Network, Inc.*, 1 Cal. App. 5th at 287-288 (citing *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th at 1145). "Substantive unconscionability is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party…" *Magno*, 1 Cal. App. 5th at 288. In addition to the unenforceable choice of law provision discussed in Section III above, Defendant's arbitration agreement is rife with provisions that are routinely deemed to be substantively unconscionable.

### 1. The Discovery Limitations Are Unconscionable.

The parties' discovery rights in arbitration are set out in the AAA Commercial Arbitration Rules. Rule 22 governs "Pre-Hearing Exchange and Production of Information." See Dkt. #17-3 (Maryot Decl.), Ex. B, pp. 26-27. That Rule requires the parties to exchange documents that they intend to rely on (R-22(b)(i)), update those exchanges, as appropriate (R-22(b)(ii)), and to produce documents reasonably requested by the other party that are "relevant and material to the outcome of disputed issues" (R-22 (b)(iii)). There is no provision for percipient or expert witness depositions or for interrogatories.

These significant limitations on discovery run afoul of the pronouncement in *Armendariz*, *supra*, 24 Cal. 4th at 83, that employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim[s], including access to essential documents and witnesses, as determined

by the arbitrator(s) and subject to limited judicial review." *Armendariz*, 24 Cal. 4th at 89. Based on *Armendariz*, arbitration agreements have been found to be substantively unconscionable for insufficient discovery when they permit much more discovery and investigation than is permitted here. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 715-719 (arbitration agreement unconscionable and unenforceable due in part to limitations on discovery, which permitted depositions of two individuals and any expert witnesses); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 786 (9th Cir. 2002) (arbitration agreement limited discovery to three non-expert depositions and 30 requests of any kind); *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal. App. 4th 494, 511-14 (2008) (agreement restricted discovery to one deposition and requests for production of documents, subject to the arbitrator's allowance of more discovery "upon a showing of substantial need"); *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1330-32 (1999) (arbitration agreement limited discovery to one interrogatory for identification of witnesses, 25 document requests, and two eight-hour depositions).

The arbitration agreement's limitations on Plaintiff's ability to take discovery are more draconian than the provisions that were deemed unconscionable in the cases discussed above. Indeed, the right to take depositions, denied here by the applicable AAA rules, is directly contrary to the California Supreme Court's pronouncement that an employee must have "access to essential documents and witnesses." *Armendariz*, 24 Cal. 4th at 89.

### 2.    The One-Year Limitations Period is Unconscionable.

It is substantively unconscionable for employers to impose arbitration agreements containing a one-year statute of limitations to statutory employment claims. *Davis v. O'Melveny & Myers*, 458 F.3d 1066, 1077 (9th Cir. 2007); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (9th Cir. 2003). Notwithstanding, Defendant's arbitration agreement provides: "A

16

demand for arbitration shall be filed no later than one (1) year after the dispute arises or the claim accrues [sic] or the claim is deemed waived." Dkt. #17-2, Ex. A. This provision is substantively unconscionable, as the statutes of limitations governing most of Plaintiff's claims in this action are three years (Cal. Code Civ. Proc. §338), and some are extended to four years pursuant to Business & Professions Code section 17200.[5] Cal. Code Civ. Proc. §340.

### 3. The Class Action Waiver is Unconscionable.

Because the F.A.A. does not apply to this case due to Plaintiff's status as a "worker[] . . . engaged in interstate commerce" (9 U.S.C. §1), California state law, as set forth in *Gentry v. Superior Court*, 42 Cal. 4th at 443, governs the enforceability of class action waivers. *See Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal. App. 5th 784, 792 (2018) ("Because we have concluded the FAA is not applicable, the appropriate test under California law to determine whether to enforce the 'class waiver' provisions of an arbitration agreement remains the four-part analysis under *Gentry*.") As explained in *Muro*, the *Gentry* four-factor test considers: "(1) 'the modest size of the potential individual recovery'; (2) 'the potential for retaliation against members of the class'; (3) 'the fact that absent members of the class may be ill informed about their rights'; and (4)

---

[5] All of Plaintiff's claims are governed by the three-year statute of limitations set forth in California Code of Civil Procedure section 338 because they are "an action upon a liability created by statute, other than a penalty or forfeiture." The longer, four-year statute of limitations within Cal. Bus. & Prof. Code §17208 also covers Plaintiff's claims for failure to pay for nonproductive time and rest periods, failure to pay minimum wages, failure to provide meal and rest breaks, failure to pay all amounts due at separation, and for failure to reimburse necessary expenses. Plaintiff's Fourth Cause of Action for noncompliant wage statements seeks recovery of a statutory penalty and is subject to a one-year statute of limitations. Cal. Code Civ. Proc. §340. The statute of limitations in Missouri for a wage claim is only two years. See Mo. Ann. Stat. § 290.527.

'other real world obstacles to the vindication of class members' rights … through individual arbitration.'" *Muro*, 20 Cal. App. 5th at 792-93, citing *Gentry*, 42 Cal. 4th at 453.

As applied here, the class waiver in Prime's arbitration agreement is substantively unconscionable. "[W]age and hour cases will generally satisfy the 'modest' recovery factor because they 'usually involve[] workers at the lower end of the pay scale.'" *Garrido v. Air Liquide Industrial U.S. LP*, 241 Cal. App. 4th 833, 846 (2015) (quoting *Gentry*, 42 Cal. 4th at 457-458). And "federal courts have widely recognized that fear of retaliation for individual suits against an employer is a justification for class certification in the arena of employment litigation…." *Gentry*, 42 Cal. 4th at 460, citing *Mitchell v. DeMario Jewelry*, 361 U.S. 288, 292 (1960); See R. Gundzik Decl., ¶ 7.[6] Moreover, there is evidence that employees—including Plaintiff—are unaware of their legal rights or the significance of an arbitration agreement and are unwilling to file a lawsuit while still employed for fear of retaliation. *Gentry*, 42 Cal. 4th at 461; See also Decl. of Ratajesak, ¶¶ 7, 11; R. Gundzik Decl., ¶ 7.[7] Finally, the real world obstacles for a new driver to vindicate his rights against a large national

---

[6] *Gentry* also cites the following cases for this proposition: *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (it is "reasonably presumed" that potential class members still employed by employer "might be unwilling to sue individually or join a suit for fear of retaliation at their jobs"); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275(10th Cir. 1977); *Arkansas Ed. Ass'n v. Board of Ed., Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765 (8th Cir. 1971); and *Slanina v. William Penn Parking Corp., Inc.* 106 F.R.D. 419, 423–424 (W.D.Pa. 1985) ("[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.")

[7] Plaintiff's counsel frequently encounter employees who are unaware of their wage and hour rights. R. Gundzik Decl., ¶ 7. Plaintiff was similarly unaware of the significance of the arbitration agreement before he consulted counsel and would not have filed a lawsuit while he worked for Prime because of fear of repercussions. Ratajesak Decl., ¶¶ 7, 11.

18

trucking company in an individual arbitration are many: the difficulty in retaining an attorney for a small employment claim against one of the country's largest law firms, the costs of attending an arbitration in another forum and attendant impact on his ability to work, and an arbitration under Missouri law which would deprive him of his unwaivable rights to be paid for his nonproductive time, noncompliant meal and rest breaks, and reimbursable expenses. Because all of the *Gentry* factors are satisfied, Defendant's class action waiver is substantively unconscionable under California law.[8]

### 4.    The Fee Requirements are Unconscionable.

"[T]he arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-111. "[I]n the context of mandatory employment arbitration agreements that apply to unwaivable statutory claims…our Supreme Court [in *Armendariz*] has held that regardless of an employee's income, an employer must pay all costs unique to arbitration, including arbitrator fees." *Penilla v. Westmont Corp.*, 3 Cal. App. 5th at 221; *See also Ramos v. Superior Court*, 28 Cal. App. 5th 1042, 1062 (2019) ("Under *Armendariz*," provision requiring employee to bear half of arbitration-related fees "cannot stand.").

Defendant's arbitration agreement violates this rule and is substantively unconscionable, as it (1) requires the parties to split the initial filing fees unless

---

[8] Because the Missouri Uniform Arbitration Act is based on the F.A.A., the class action waiver would not be substantively unconscionable if Missouri law is applied. *Eaton v. CMH Homes, Inc.*, No. SC 94374, 2015 WL 3387910 (Mo. banc May 26, 2015) (whether an arbitration agreement is valid under the Missouri Uniform Arbitration Act is guided by the principles set forth by *AT&T Mobility LLC v. Concepion*, 131 S.Ct. 1740 (2011)).

OPPOSITION TO MOTION TO COMPEL ARBITRATION

the arbitrator finds "a substantial hardship" and (2) imposes the AAA Commercial Rules, which permit the arbitrator's fees to be split.

### 5.    The Forum Selection Clause is Unconscionable.

"Although a party opposing enforcement of a forum selection clause ordinarily bears the burden to show enforcement would be unreasonable or unfair, the burden is reversed when the underlying claims are based on statutory rights the Legislature has declared to be unwaivable." In such cases, the party seeking enforcement must show that those rights would not be diminished. *Verdugo*, 237 Cal. App. 4th at 144-145.

Moreover, the courts have found that a forum selection clause and choice of law provision must be read jointly because they are "inextricably bound up," particularly where "the basis of the claim concerns an unwaivable state law right for which the transferee forum is inadequate." *Sessions v. Prospect Funding Holdings LLC*, 2017 U.S. Dist. LEXIS 222220, *8-*10 ; *citing Verdugo*, 237 Cal. App. 4th at 154. "'[F]orum selection clauses with related choice of law provisions 'substantially diminish the rights of California residents,' especially when the foreign forum is required to completely disregard California law and apply its own law." *Lang v. Skytap, Inc*., 2018 U.S. Dist. LEXIS 18270, at *10-*11, *citing Verdugo*, 237 Cal. App. 4th at 149-151. The mere potential that California citizens may lose their legal protections is enough to invalidate a forum selection clause. *Hall v. Superior Court*, 150 Cal. App. 3d at 416-417.

In *Verdugo*, the plaintiff alleged putative class claims that—like Mr. Ratajesak's—were based on her statutory rights under the Labor Code. The *Verdugo* court refused to enforce the forum selection clause in the parties' arbitration agreement, explaining that "California courts repeatedly have recognized sections 219 and 1194 make the Labor Code provisions on which Verdugo bases her claims unwaivable, and also make any contract purporting

20

to waive those rights illegal and unenforceable." *Verdugo*, 237 Cal. App. 4th at 150, citing *Schachter v. Citigroup, Inc*. 47 Cal.4th 610, 619 (2009); *also citing Gentry v. Superior Court*, 42 Cal. 4th at 455, fn. 3; *also citing Hoover v. American Income Life Ins. Co*., 206 Cal. App. 4th 1193, 1208 (2012) ("the rights accorded by sections 203, 1194, and 2802 may not be subject to negotiation or waiver"). Because the forum selection clause had "the potential to contravene an antiwaiver statute designed to protect California residents from business practices that do not meet Labor Code standards," the *Verdugo* court refused to enforce it. *Verdugo*, 237 Cal. App. 4th at 151.

Accordingly, where—as here—an agreement includes both a forum selection clause and a choice of law provision which, if applied, would deny the plaintiff of his or her rights under the California Labor Code, both the choice of law provisions and the forum selection clause are invalid. *Verdugo*, 237 Cal. App. 4th at 157; *Lang*, 2018 U.S. Dist. LEXIS 182701, at *13-*14.[9]

### 6.    The Delegation Clause is Unconscionable.

"A provision delegating authority to the arbitrator to resolve questions of unconscionability is itself unconscionable." *Baxter v. Genworth North America Corp.,* 16 Cal. App. 5th 713, 732 (2017), *citing Pinela*, 238 Cal. App. 4th at 254; *see also Ontiveros v. DHL Express (USA), Inc*., 164 Cal. App. 4th 494, 504 (2008) (delegation clause giving arbitrator authority to decide enforceability invalidated). Further, where an agreement contains both choice of law and delegation clauses, "a determination as to the validity of the choice of law provision as it applies to the delegation clause is a prerequisite to a

---

[9] Prime bills itself as being "North America's most successful refrigerated, flatbed, tanker, and intermodal trucking company." R. Gundzik Decl., ¶ 8, Ex. E. It has an affiliated floral business in Oxnard, California and a drop yard in Fontana, California. Id., at ¶¶ 9-10, Exs. F and G. It therefore cannot reasonably complain about the cost of being required to defend the unlawful labor practices it imposed on California residents in a California court.

21

1   determination of whether the … delegation clause should be enforced." *Pinela*,

2   238 Cal. App. 4th at 249, *citing Hall v. Superior Court*, 150 Cal. App. 3d at

3   416. When both clauses are present and the chosen state's laws deprive an

4   employee of the protections of California employment laws, the delegation

5   clause will not be enforced. *Pinela*, 238 Cal. App. 4th at 246-248. And, the

6   decision as to whether an arbitration agreement is within the scope of the

7   F.A.A.'s Section 2 exclusion may not be delegated to the arbitrator. *New*

8   *Prime, Inc. v. Oliveira*, ___S. Ct. ___, 2019 WL 189342, *5 ("a court may use

9   §§ 3 and 4 to enforce a delegation clause only if the clause appears in a 'written

10  provision in ... a contract evidencing a transaction involving commerce'

11  consistent with § 2.")

12         Prime's arbitration agreement improperly delegates to the arbitrator the

13  ability to decide "any question that in any manner involves…the arbitrability of

14  disputes between the parties" and also includes a Missouri choice of law

15  provision. See Dkt. #17-2, Ex. A. This delegation is substantively

16  unconscionable. *Baxter v. Genworth North America Corp.,* 16 Cal. App. 5th at

17  732. It is also invalid because, together with the choice of law provision, it

18  deprives Plaintiff of the rights accorded to him under California labor laws.

19  *Pinela*, 238 Cal. App. 4th at 246-248.

20         **C.     The Agreement is Permeated with Unconscionability.**

21         "An employment arbitration agreement can be considered permeated by

22  unconscionability if it 'contains more than one unlawful provision… Such

23  multiple defects indicate a systematic effort to impose arbitration on an

24  employee not simply as an alternative to litigation, but as an inferior forum that

25  works to the employer's advantage.'" *Carbajal*, 245 Cal. App. 4th at 254, *citing*

26  *Ajamian v. Cantor CO2e, L.P.*, 203 Cal. App. 4th at 803.

27         Here, the arbitration agreement includes seven sentences in total. Of

28  those, five are unconscionable because they either deprive an employee of

22

unwaivable statutory rights, are invalid delegation clauses, improperly shorten the applicable statutes of limitations, or set forth an improper class waiver or improper cost splitting. See Dkt. #17-2, Ex. A. Not only does the agreement include multiple defects, but its two enforceable sentences—"The arbitration award shall be conclusive and binding" and "Both parties agree to be fully and finally bound by the arbitration award"—cannot be enforced alone. Illegal provisions in a contract will only be severed "[i]f the illegality is collateral to the main purpose of the contractual provision." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 90 (2014), citing *Armendariz*, 24 Cal. 4th at 124. Because all of the primary provisions of the arbitration agreement are unconscionable, this illegality is central to the agreement and cannot be severed.

## V. LABOR CODE SECTION 925 PRECLUDES ENFORCEMENT.

California Labor Code § 925, which applies to all contracts entered into after January 1, 2017, provides in relevant part:

> "(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> (1) Require the employee to adjudicate outside of California a claim arising in California.
>
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute."

The arbitration agreement is void pursuant to Labor Code section 925.[10] Plaintiff is a California resident who worked for Prime in California more than any other state. Ratajesak Decl., ¶ 9. He was required to enter into an arbitration agreement with Prime that both requires him to adjudicate his claims outside of California (in Missouri) and which deprives him of the substantive protections of California law with respect to his right to be treated as an employee, the right to be paid at least minimum wage for each hour he worked, the right to be paid all amounts due at separation, the right to be paid premium wages for his missed, late and/or on-call rest breaks and meal breaks, the right to be paid for his unreimbursed expenses, and the right to obtain penalties for inaccurate wage statements.

Because section 925 is recently-created, there are not yet cases interpreting its scope. Yet the legislative history of Labor Code section 925 indicates that it was enacted to prevent enforcement of arbitration agreements such as the one Prime seeks to enforce, as that legislative history explains that Section 925 was intended to be a safeguard against the unfair aspects of choice of law and choice of forum clauses which deprive California residents of the protections of California labor laws. RJN, No. 1.

## CONCLUSION

Based on the forgoing reasons, Defendant's motion should be denied.

DATED:  January 25, 2019          GARTENBERG GELFAND HAYTON LLP

By: */s/ Rebecca G. Gundzik*

Attorneys for Plaintiff Paul Ratajesak, individually and on behalf of all others similarly situated

---

[10]Plaintiff has expressed his intent to void Prime's arbitration agreement, which includes numerous provisions that violate Labor Code section 925, by filing his lawsuit in California and by opposing Prime's motion to compel arbitration.

24