JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)                          Date:  March 20, 2019

Title: PAUL RATAJESAK V. NEW PRIME, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING MOTIONS TO COMPEL ARBITRATION [22] [17]**

Before the Court are Defendant New Prime, Inc.'s ("New Prime") Motions to Compel Arbitration (*Ratajesak*[1] Dkt. 22; *Johnson* Dkt. 17) (collectively, "Motions"). The Court finds these matters appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers and considered the parties' arguments, the Court GRANTS Defendants' Motions.

**I.   Background**

**A.   Facts**

The following facts are drawn from Plaintiff Paul Ratajesak's Complaint ("*Ratajesak* Compl.") (Dkt. 1-4) and Plaintiff David Johnson's Complaint ("*Johnson*

---

[1] "*Ratajesak*" shall refer to the docket in the underylying action, Case No. SA CV 18-9396-DOC (AGRx). "*Johnson*" shall refer to the docket in *David Johnson v. New Prime, Inc. et al*, Case No. SA CV 18-9398-DOC-AGRx. The Court consolidated these cases on February 25, 2019, after the Motions to Compel Arbitration were fully briefed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)                                   Date: March 20, 2019
                                                                                                                                                                              Page 2

Compl." (Dkt.1-4). Plaintiffs Ratajesak and Johnson (collectively, "Plaintiffs") have filed a wage and hour class action suit against New Prime.

### 1.         Alleged Wage and Hour Violations

Defendant New Prime is a trucking company primarily involved in the delivery of refrigerated goods nationwide, organized under Nebraska Law and registered to and conducts business within Orange County, California. *Ratajesak* Compl. ¶ 2.

Plaintiff Ratajesak worked for New Prime as a truck driver between 2017–2018 while residing in Los Angeles, California. *Id.* ¶ 15. Prior to working for Defendant, Ratajesak alleges that he was required to enter into a long-term contract to lease a truck. *Id.* ¶ 16. His lease was with Success Leasing, Inc., which is located in the same building in Springfield, Missouri as New Prime, and is affiliated with New Prime. *Id.* Ratajesak was also required to pay all expenses associated with operating the truck and working for New Prime. *Id.* ¶ 17. The expenses included insurance, fuel, maintenance and repairs and unloading, among others. *Id.* Ratajesak attended a mandatory four-day job training between August 14 through August 17, 2017 in Salt Lake City, Utah. *See* Ratajesak Declaration ("Ratajesak Decl.") (Dkt. 25-2) ¶ 5. He signed some papers concerning training, orientation, and a government mandated physical examination. *Id* ¶ 5. After completing the training, Plaintiff rode with another driver to pick up a load near Salt Lake City, drove the load to Arkansas and dropped it off, and then drove the empty truck to Springfield, Missouri to pick up the truck he would be driving for New Prime. *Id.* Ratajesak signed the rest of the paperwork for his job at New Prime's office in Springfield, including an Independent Contractor Agreement. *Id* ¶¶ 6–7. The Agreement contained an arbitration provision. *Id* ¶ 7.

While employed, Ratajesak alleges that he was not provided with compliant meal and rest breaks. *Ratajesak* Compl. ¶ 18. When he took ten-minute rest breaks, he was not separately compensated for such time. *Id.* Ratajesak also alleges that he was not provided with wage statements that fully comply with California law. *Id.* ¶ 19. Upon leaving his job, Ratajesak was not paid all wages owed within the time period specified in California Labor Code § 201 and 202. *Id.* ¶ 20. Ratajesak alleges that during employment he was an employee of New Prime, but was unlawfully labeled an independent contractor. *Id.* ¶ 11(viii). Ratajesak stopped working for New Prime after approximately 20 weeks. Ratajesak Decl. ¶¶ 9–11.

Plaintiff Johnson has worked for New Prime as a truck driver from July 2017 to present. *Johnson* Compl. ¶ 15. During the employment, Johnson resided in Los Angeles, California. *Id.* Between July 17 and July 21, 2017, Johnson attended a mandatory job

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---:|
| Case No. SA CV 18-9396-DOC (AGRx) | Date: March 20, 2019 |
| | Page 3 |

training at Salt Lake City, Utah. *See* Johnson Declaration ("Johnson Decl.") (Dkt. 20-2) ¶ 5. While employed on driving assignments, Johnson alleges that New Prime did not properly compensate for all hours worked during training. *Id.* ¶ 17. Moreover, New Prime did not provide workers with compliant meal and rest breaks while employed on driving assignments. *Id.* ¶ 18. When Johnson took ten-minute rest breaks, he was not separately compensated for such time. *Id.* Johnson alleges that he and other class members were not provided with wage statements that fully comply with California law during the employment period. *Id.* ¶ 19. Johnson and other class members incurred expenses while performing their duties for New Prime, but New Prime did not always reimburse the employees for such expenses. *Id.* ¶ 20.

### 2. Arbitration Provisions

Plaintiffs each executed employment paperwork for New Prime. Ratajesak executed an Independent Contractor Operating Agreement ("Operating Agreement") on August 22, 2017. Ratajesak Decl. ¶¶ 5–6; Declaration of Steven Field ("Field Decl.") (*Ratajesak* Dkt. 22-2), Ex. A. The Operating Agreement has an arbitration provision. *Id.* at 9–10.

On the day he signed the contract, Ratajesak alleges that no one from New Prime told him or suggested to him that any of the terms of the Operating Agreement were negotiable. Ratajesak Decl. ¶ 6. He was given already-drafted contracts, which he was told to sign in order to start driving. *Id.* Ratajesak was not told that the arbitration provision in the Operating Agreement was in any way optional or that he could opt out of it. *Id.* ¶ 7. At the time he signed the agreement, he did not understand that the arbitration rules under this agreement, and arbitration in general, would be less favorable to him. *Id.* Ratajesak did not understand that because of the terms of the arbitration provision, he would lose the rights provided under California law, particularly the right to be treated as an employee and not an independent contractor, as well as the rights provided under the California Labor Code to be paid for his non-productive time and rest breaks, the right to be paid at least minimum wage for hours worked, the right to be paid all amounts due at separation, the right to be paid premium wages for his missed, late and/or on-call rest breaks and meal breaks, the right to be paid for his reimbursed expenses, and the right to obtain penalties for inaccurate wage statements. *Id.*

Johnson started working for New Prime in July 2017. Johnson Decl. ¶ 3. On the day he finished training for his new job in Utah, Johnson was given employment forms to sign. *Id.* ¶ 6. Johnson signed the forms on July 21, 2017, which includes a standalone one-page arbitration clause and a separate "Arbitration Form Opt-Out." *See* Field Declaration ("Field Decl.") (*Johnson* Dkt. 17-2), Exs. A–B. The arbitration clause has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)                                   Date: March 20, 2019
                                                                                                                  Page 4

two sections. *Id.*, Ex. A. Johnson initialed the first section indicating consent to the arbitration clause. *Id.* Johnson did not initial the second section subtitled "Notice of Opt-Out." *Id.* Johnson also did not sign or fill out the "Arbitration Form Opt-Out" on the second page indicating intent to opt-out of arbitration in case of any disputes with New Prime. *Id.* Ex. B.

Johnson alleges that until he retained an attorney, he did not understand what arbitration meant, what the Notice of Opt-Out meant, or why he would want to opt out of the arbitration agreement. Johnson Decl. ¶ 7. He did not understand that the arbitration rules in the arbitration agreement, and arbitration in general, would be less favorable to him. *Id.* He did not understand that if he did not opt out of the agreement, he would lose the rights provided to employees under the California Labor Code, or the ability to file a class action lawsuit on behalf of all of the drivers who reside in California. *Id.*

**B.     Procedural History**

On September 24, 2018, Plaintiff Johnson filed a putative class and collective action Complaint. On October 1, 2018, Plaintiff Ratajesak filed a similar, now operative complaint. Plaintiff brings seven claims: (1) failure to pay wages for nonproductive time or rest breaks in violation of California Labor Code § 226.2; (2) failure to pay a minimum wage for hours worked in violation of California Labor Code §§ 1194, 1197 and 1197.1; (3) failure to provide adequate meal periods in violation of California Labor Code §§ 226.7, 512 and applicable IWC orders; (4) failure to furnish itemized wage statements in violation of California Labor Code § 226; (5) failure to pay wages earned and unpaid upon discharge of employee in violation of California Labor Code §§ 201–202; (6) failure to pay reimbursement of expenses incurred in violation of California Labor Code § 2802; and (7) unfair competition in violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.* Compl. ¶¶ 22–57.

On November 2, 2018, Defendant removed both cases to this Court (Dkt. 1). On February 25, 2019, the Court consolidated the cases.

Before consolidation, the parties agreed to a dual-tracked extended briefing schedule. On December 7, 2018, Defendant filed the instant motion to compel arbitration in *Ratajesak* ("Ratajesak Mot.") (Dkt. 22). On January 25, 2019, Plaintiff opposed ("Ratajesak Opp'n") (Dkt. 25). On February 4, 2019, Defendant replied ("Ratajesak Reply") (Dkt. 32). Also on December 7, 2018, Defendant filed the motion to compel arbitration in *Johnson* ("Johnson Mot.") (Dkt. 17). On January 25, 2019, Plaintiff opposed ("Johnson Opp'n") (Dkt. 20). On February 4, 2019, Defendant replied ("Johnson

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)            Date: March 20, 2019
                                                                                                                Page 5

Reply") (Dkt. 25). Because the cases are now consolidated, the Court resolves the Motions collectively.

## II.      Legal Standard

"[A]n agreement to arbitrate is a matter of contract." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[I]t is a way to resolve those disputes—but only those disputes—the parties have agreed to submit to arbitration." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The party seeking to compel arbitration "bears 'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecoms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). Before ordering arbitration, a court must determine whether a contract agreement falls within the ambit of Federal Arbitration Act § 1, which exempts contracts of employment for certain class of transportation workers from arbitration. *New Prime Inc. v. Oliveria*, 139 S. Ct. 532, 534 (2019). Arbitration agreements may be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Zaborowski v. MHN Government Serv., Inc.*, 936 F. Supp. 2d 1145, 1150 (2013).

## III.     Discussion

New Prime moves to compel arbitration in this now-consolidated action because according to New Prime, Plaintiffs must arbitrate their claims under the Missouri Uniform Arbitration Act. Johnson Mot. at 3–9; *see generally* Ratajesak Reply. According to Defendant, the Missouri Uniform Arbitration Act governs the arbitration agreement and requires that Plaintiff submit claims to arbitration for adjudication on an individual basis. Johnson Mot. at 3 (citing Field Decl., Ex. A). New Prime argues that the agreements contain a clear, unmistakeable, and enforceable delegation clause that requires that the arbitrator decide the arbitrability of disputes. *Id*. at 7. Moreover, even if the Court were to dive into the gateway issues of arbitrability, New Prime argues that the arbitration agreement is valid and enforceable. *Id*.

Plaintiffs respond on several (and at times disjointed) fronts. First, Plaintiffs argue that the arbitration agreement does not cover the claims alleged in the *Johnson* action. Johnson Opp'n at 1. Second, Plaintiffs argue that the choice-of-law provision in both arbitration agreements is unenforceable because it is contrary to fundamental California policies. *Id.* at 2; Ratajesak Opp'n at 5. Third, according to Plaintiffs, the agreement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)                                  Date: March 20, 2019
                                                                                                             Page 6

cannot be enforced pursuant to sections of the California Labor Code that Plaintiffs argue preclude enforcement of arbitration agreements. Johnson Mot. at 2. And fourth, Plaintiffs argue the agreements are unconscionable under California law. *Id*.

     As a preliminary matter, the Court notes that the United States Supreme Court recently reviewed New Prime's arbitration agreement and determined that the Federal Arbitration Act's exclusion applies to the drivers New Prime has classified as independent contractors. *New Prime, Inc. v. Oliveira*, ___S. Ct. ___, 2019 WL 189342. Thus New Prime's arguments under the FAA are denied in light of this recent decision.

### A.     Whether the Choice-of-Law Provision is Enforceable

     Under the California Supreme Court decision *Nedlloyd Lines v. Superior Court*, 3 Cal. 4th 459, 466 (1992), California law requires a three-step analysis to determine whether a choice-of-law clause is enforceable. First, the court must determine either: "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Id*. at 466. "If ... either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California." *Id*. "If ... there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id*. (internal quotation marks omitted).

     According to Plaintiffs, applying the *Nedlloyd* test to New Prime's arbitration agreements, the choice-of-law provisions are invalid because Missouri laws are contrary to fundamental California policies. Ratajesak Opp'n at 6. "Although there may be a reasonable basis for New Prime to have chosen the laws of Missouri, Missouri's laws regarding the enforcement of arbitration agreements and its policies regarding the treatment and compensation of employees are contrary to the fundamental policies of California." Ratajesak Opp'n at 6. Plaintiffs argue that unlike Missouri, which follows the FAA, the California legislature has expressed an "[o]utright legislative hostility to arbitrating wage claims[.]" *Id*. at 7 (citing *Gentry v. Superior Court*, 42 Cal. 4th 443, 465 n.8 (2007)). Plaintiffs argue that California Labor Code Section 229 reinforces this strong California policy, which prevents an employer from forcing an employee to arbitrate claims for unpaid wages. *See* Cal. Lab. Code § 219(a); *Garcia v. Superior Court*, 236 Cal. App. 4th 1138, 1146 (2015) ("[I]f the agreements are exempt from the FAA under section 1, their arbitration provisions are trumped by Labor Code section 229.").

     Defendant argues that Plaintiffs have teed up the wrong issue for the Court. According to Defendant, under the choice of law analysis the only question before the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)                                                  Date: March 20, 2019
                                                                                                                   Page 7

Court is whether the arbitration agreement is enforceable where the agreement delegates the question of arbitrability to the arbitrator. Ratajesak Reply at 1–2. According to Defendant, the only purportedly fundamental California policies identified by the Plaintiffs in the choice-of-law analysis "have nothing to do with" this central issue of delegation. *Id*. at 2. Defendant argues that both Missouri and California law honor agreements that delegate questions of arbitrability. *Id*.

The Court applies the *Nedlloyd* test to the Missouri choice-of-law provisions in the New Prime agreements. Plaintiffs appear to concede that there is a reasonable connection to Missouri law. Ratajesak Opp'n at 6. Regardless, New Prime has its principal place of business in Missouri. See Ratajesak Compl. ¶ 16. Thus, Missouri law has a substantial relationship to the parties and there is a reasonable basis for selecting Missouri law to govern the agreements. *See Hughes Electronics Corp. v. Citibank Delaware*, 120 Cal. App. 4th 251, 258 (2004) ("Citibank's principal place of business is in New York. This fact alone is sufficient to establish a 'substantial relationship' between New York and the parties as well as a 'reasonable basis' for a contractual provision requiring application of New York law."). The next question is therefore whether any fundamental public policy of California is offended by application of Missouri law. *Neddloyd*, 3 Cal. 4th at 466.

Because the agreements contain a delegation clause, the question presented to the Court is narrow. The Court declines to address California policy governing arbitration of unpaid wages when, as here, the parties contracted to delegate questions of arbitrability to the arbitrator. Under *Nedlloyd*, the Court must determine whether the application of Missouri law as to the ***delegation*** of arbitrability conflicts with a fundamental California policy. Because California law also requires enforcement of the delegation clause, there is no conflict.

"[A]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce," such that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing [that] specific agreement to arbitrate." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Indeed, even where a court believes that the underlying claims are plainly non-arbitrable, it must delegate that question to the arbitrator unless the delegation clause is itself unenforceable. *See id*. at 71–72; *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.")

Here, the arbitration agreements clearly and unmistakably provide that "ANY DISPUTES AS TO THE RIGHTS AND OBLIGATIONS OF THE PARTIES,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)                          Date: March 20, 2019
                                                                                                  Page 8

INCLUDING THE ARBITRABILITY OF DISPUTES BETWEEN THE PARTIES, SHALL BE FULLY RESOLVED BY ARBITRATION . . . ." Ratajesak Field Decl., Ex. A.[2] Moreover, the Operating Agreement and *Johnson* arbitration agreement require that arbitration be governed by AAA Commercial Arbitration Rules, which bolsters intent to arbitrate the threshold issue of arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").

There is no conflict of law as to whether this clear and unmistakable evidence of delegation must be enforced. *Compare Springleaf Fin. Servs., Inc. v. Shull*, 500 S.W.3d 276, 282 (Mo. Ct. App. 2016) ("Arbitrability becomes an issue for the arbitrator to decide where the agreement provides clear and unmistakable evidence that the parties intended to arbitrate those issues.") *with Imperial v. FibroGen, Inc.*, No. A153535, 2019 WL 910656, at *2 (Cal. Ct. App. Feb. 25, 2019) ("Courts have consistently held that an express provision directing the arbitrator to determine the enforceability of the arbitration provisions constitutes 'clear and unmistakable evidence' of an intent to delegate.").

Plaintiffs' attack under *Nedlloyd* is premature. Plaintiffs' arguments regarding the scope of the arbitration agreement; the application of California Labor Code Section 925; and the application California Labor Code Section 229 may well render the claims unarbitrable. But under the contract, the parties clearly and unmistakably delegated this question to the arbitrator.

### B.      Whether the Delegation Clause is Unconscionable

But the Court cannot enforce the delegation clause if it is unconscionable. *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 240 (2015) ("the delegation must not be revocable under state contract defenses to enforcement. Among these defenses is unconscionability."). Plaintiff argues that New Prime's delegation clause is unconscionable. Ratajesak Opp'n at 22.

"The core concern of [the] unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Pinela*, 238 Cal. App. 4th at 241 (internal quotations omitted). The doctrine is meant to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, so one sided

---

[2] The Johnson arbitration agreement provide that "any disputes arising under, arising out of or relating to this agreement . . . including any question that in any manner involves forum or jurisdictional matters respecting the arbitrability of disputes between the parties, shall eb fully and exclsuviely resolved by arbitration[.]" Johnson Field Decl., Ex. A.

as to shock the conscience, or unfairly one sided. *Id*. "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." *Id*. "In assessing substantive unconscionability, the paramount consideration is mutuality." *Id*.

       Plaintiff fails to show that the delegation clause is substantively unconscionable. As discussed *supra*, California courts recognize and enforce delegation clauses and appear to have enforced such provisions for decades. *See Freeman v. State Farm Mut. Automobile Ins. Co.,* 14 Cal. 3d 473, 480 (1975) ("'The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract.'"). The decision in *Pinela* does not alter the outcome. In that case, the court determined that the delegation clause in that case was part of a contract of adhesion and for the same reasons was procedurally unconscionable. 238 Cal. App. 4th at 243. The delegation clause was presented "along with the rest of the Agreement on a take-it-or-leave-it basis" and is a "rather arcane issue upon which parties likely do not focus." *Id*. (citation and internal quotations omitted). The court determined that "[a]lthough the delegation clause was not hidden . . . it might as well have been." *Id*. at 244. Under the substantive unconscionability prong, the court noted that the arbitration agreement at issue required the application of Texas law and specified that the arbitrator "*does not have the authority to enlarge, add to, subtract from, disregard, or ... otherwise alter the parties' rights under such laws*." *Id*. at 246 (italics in original). While the agreement provided that the arbitrator will determine a challenge to the enforceability of the agreement brought by a California employee, the agreement also ***prohibits the arbitrator from applying California unconscionability standards in making that determination***." *Id*. (emphasis added). "The elimination of [plaintiff's] ability to contend that the NMG Arbitration Agreement as a whole is unconscionable under California law renders the delegation clause substantively unconscionable." *Id*. at 248.

       Here, nothing in the delegation clause limits the arbitrator's ability to determine whether the Missouri choice-of-law provision is unenforceable. As New Prime concedes, "[t]he delegation clause empowers the arbitrator to invalidate the arbitration agreement if it is unconscionable—and even to apply California unconscionability law in doing so." Ratajesak Reply at 7. There is nothing so harsh or one-sided about this delegation clause that "[n]o man in his senses and not under delusion would make [it] on the one hand, and as no honest and fair man would accept [it] on the other." *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 214 (1994). Plaintiffs can (and should) raise their challenges before the arbitrator.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 18-9396-DOC (AGRx)        Date: March 20, 2019
Page 10

## IV. Disposition

For the reasons stated above, the Court GRANTS Defendant's Motions to Compel Arbitration. The Court STAYS this case. Defendant is ORDERED to file a status report on arbitration proceedings **every three months** from the date of this order, and within **fourteen (14) days** of the conclusion of any challenges to arbitrability brought before the arbitrator.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11        Initials of Deputy Clerk: djl
CIVIL-GEN